**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TERRENCE G. CLEVELAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-8283 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| LUKE SWANSON, R. MOORE, and ) | |
| M. TOWNSEND, in their individual capacities, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss on qualified immunity grounds [5]. For the reasons stated below, the Court respectfully denies the motion. This case is set for further status hearing on 6/18/2013 at 9:00 a.m.

**I.     Background**

For purposes of the current motion to dismiss, the Court accepts as true all factual allegations in the complaint [1] and draws all reasonable inferences in Plaintiff's favor. *E.g.*, *White v. Marshall & Ilsley Corp.*, --- F.3d ---, 2013 WL 1688918, at *5 (7th Cir. Apr. 19, 2013).

Plaintiff Terrence G. Cleveland is an African-American male who was born in 1986. [1] ¶ 4. On the morning of October 17, 2010, at approximately 8:40 a.m., Plaintiff was driving a 2003 Pontiac Grand Am along West 87th Street near Naper/Plainfield Road in Naperville, Illinois. *Id.* ¶ 6. The car was owned by and registered to Plaintiff's mother, Lolita Cleveland, who lived in nearby Bolingbrook, Illinois. *Id.* Plaintiff was driving the car to his parents' home in Bolingbrook, *id.*, and was doing so in a lawful fashion. *Id.* ¶ 7. There were no outstanding warrants for Plaintiff or his mother. *Id.* ¶¶ 7-8.

Defendant Luke Swanson, a police officer employed by the City of Naperville, Illinois, observed Plaintiff driving the Grand Am on the morning of October 17, 2010. See *id.* ¶¶ 5, 9. Defendant Swanson had a police dispatcher check the license plate on the Grand Am to see if there was any reason for him to stop the vehicle. *Id.* ¶ 9. The dispatcher ran the license plate number and reported to Defendant Swanson that the Grand Am was registered to a "Lola Cleveland" and further reported that "Lola Cleveland" was "clear," meaning that there was no basis for Swanson to stop "Lola Cleveland." *Id.* ¶ 10.

Defendant Swanson asked the dispatcher to report to him the name and status of a male person in his late teens or early twenties who lived at the same address as the owner of the Grand Am. *Id.* ¶ 11. The dispatcher reported that a man named Theodore Cleveland, born in 1985, lived at the same address as the Grand Am's owner. *Id.* ¶ 12. The dispatcher informed Defendant Swanson that Theodore Cleveland's driver's license had been revoked. *Id.*

On the basis of this report from the dispatcher, Defendant Swanson activated the lights on the police car he was driving and pulled over Plaintiff. *Id.* ¶ 13. Defendant Swanson approached the Grand Am and asked Plaintiff to provide his license and insurance information. *Id.* ¶ 14. Plaintiff complied with Defendant Swanson's request. *Id.* ¶ 15. Rather than permitting Plaintiff to leave after Plaintiff produced the documents, Defendant Swanson told Plaintiff to stay in the car with the door open while he returned to his police cruiser. *Id.* ¶ 17. Sometime thereafter, Defendants R. Moore and M. Townsend, both of whom are police officers employed by the City of Naperville, separately arrived on the scene. *Id.* ¶¶ 5, 18.

Defendant Swanson approached the Grand Am a second time. *Id.* ¶ 19. He asked Plaintiff who Theodore Cleveland was. *Id.* Plaintiff truthfully replied that Theodore Cleveland was his father. *Id.* ¶ 20. Plaintiff did not mention at that time that he also had a younger brother named

2

Theodore Cleveland. See *id.* ¶¶ 20, 23. Defendant Swanson returned to his police cruiser, again telling Plaintiff to remain on the scene, in the Grand Am with the door open. See *id.* ¶ 21.

Defendant Swanson then approached the car for a third time and accused Plaintiff of lying. Defendant Swanson told Plaintiff that Theodore Cleveland could not be his father because police records indicated that Theodore Cleveland was born in 1985. *Id.* ¶ 22. Plaintiff told Defendant Swanson that the Theodore Cleveland who was born in 1985 was Plaintiff's brother. *Id.* ¶ 23. Defendant Swanson once more returned to his cruiser, again telling Plaintiff to remain in the Grand Am with the door open. *Id.* ¶ 24.

At some point more than ten minutes after the stop began, Defendant Swanson and one of the other Defendants approached the Grand Am and told Plaintiff to get out of the car. *Id.* ¶ 25. These two Defendants also asked Plaintiff if he had any more identification. *Id.* Plaintiff complied with the officers' instructions to exit the car. *Id.* ¶ 26. While he was exiting the Grand Am, Plaintiff asked the officers why he had been pulled over. *Id.* These two Defendants told Plaintiff that they had run the Grand Am's plates and falsely stated that the vehicle came up under the name Theodore Cleveland. *Id.*

The officers again asked Plaintiff if he had any additional identification. *Id.* ¶ 27. Plaintiff provided the officers with his Illinois state photo identification card, his Kishwaukee Community College identification card, a credit card bearing his name, and his Social Security card. *Id.* Plaintiff also told the officers that his brother Theodore was in jail. *Id.* Additionally, Plaintiff provided the officers with his birthdate after they requested it. *Id.* ¶ 28.

Sometime thereafter, one of the Defendants asked Plaintiff if he had any tattoos. *Id.* ¶ 29. Plaintiff told the officers that he had a tattoo on his right shoulder. *Id.* Defendants demanded to see Plaintiff's tattoo. *Id.* ¶ 30. Plaintiff removed his right arm from his jacket, unbuttoned his

3

cardigan sweater, unbuttoned his shirt, and showed Defendants the tattoo on his right shoulder: a music staff, clef and notes. *Id.* The dispatcher subsequently informed Defendant Swanson that the Theodore Cleveland who resided at the same address as the owner of the Grand Am had a tattoo of a cross with angel wings in the shape of a heart on his upper right arm. *Id.* ¶ 31.

Even after learning this information about the tattoos, Defendants required Plaintiff to remain on the scene for at least ten more minutes. *Id.* ¶ 32. During that time, Defendant Swanson had the dispatcher call the DuPage and Will County Jails to confirm that Plaintiff's brother, Theodore Cleveland, was incarcerated in one of the facilities. *Id.* ¶ 33. While they waited, Defendants made Plaintiff show them a scar on his abdomen. *Id.* ¶¶ 33-34. Defendants eventually permitted Plaintiff to leave the scene. *Id.* ¶ 35.

Plaintiff alleges that he was humiliated and suffered mental anguish and stress during the encounter, which he alleges was undertaken with the intent to harass him on the basis of his race or to deprive him of his rights under the Fourth Amendment. *Id.* ¶¶ 36, 38. Plaintiff's theory "is not that the initial stop was unconstitutional, but rather that it was continued longer than was necessary, and, therefore, that the stop was unconstitutional because it was not 'reasonably related in scope to the circumstances which justified the interference in the first place.'" [9] at 2 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Plaintiff does not allege that he was issued a ticket or arrested, or that his person or car was searched.

Defendants have moved to dismiss Plaintiff's complaint [5]. They contend that they "acted reasonably to verify the Plaintiff's identity and promptly released the Plaintiff when his identity was confirmed. Therefore, the Plaintiff was not unlawfully seized because the initial traffic stop and subsequent limited investigation were reasonable and lawful. Accordingly, qualified immunity is applicable and this matter must be dismissed." [6] at 1.

**II.     Legal Standards**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir.1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "'fair notice of what the * * * claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

"Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012). As a general matter, the

doctrine of qualified immunity can shield public officials like Defendants from civil liability if they can demonstrate that they were performing a discretionary function and that a reasonable law enforcement officer in their position would have believed that, at the time he acted, his actions were within the bounds of the law. *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007). As the Supreme Court recently explained, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quotations omitted). Claims of qualified immunity involve two questions: (1) whether the officials' conduct violated a constitutional right, and (2) whether the right was clearly established at the time. *Surita v. Hyde*, 665 F.3d 860, 868 (7th Cir. 2011). The Court may consider these questions in any order, *Reher v. Vivo*, 656 F.3d 772, 775 (7th Cir. 2011), and a negative answer to either question entitles the officials to the defense. *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009). "Although it is ordinarily an affirmative defense, a qualified immunity defense may be raised in a motion to dismiss." *Annan v. Vill. of Romeoville*, 2013 WL 673484, at *3 (N.D. Ill. Feb. 25, 2013) (citing *McDonald ex rel. McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992)); see also *Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009). "To overcome a defense of qualified immunity at the pleading stage, the complaint must contain sufficient factual allegations to show that the defendant's conduct violated a constitutional right and that the right was clearly established at the time of the alleged violation." *Engel v. Buchan*, 710 F.3d 698, 708 (7th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

**III. Discussion**

Plaintiff brings a § 1983 claim against Defendants for unreasonable seizure in violation of the Fourth and Fourteenth amendments. To prove a claim under 42 U.S.C. § 1983, Plaintiff

6

must show that a person acting under color of state law deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. See, e.g. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Defendants do not dispute that they were acting under color of state law at the time of the alleged incident.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. It is applicable to the states via incorporation through the Fourteenth Amendment. See, *e.g.*, *Contreras v. City of Chi.*, 119 F.3d 1286, 1290 (7th Cir. 1997). "When police officers stop an automobile and detain the occupants, even if only for a brief period, the stop amounts to a seizure within the meaning of the Fourth Amendment." *United States v. Bueno*, 703 F.3d 1053, 1059 (7th Cir. 2013) (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996)). Traffic stops must therefore satisfy the Fourth Amendment's requirement of reasonableness, *id.*, both at their inception and in any accompanying detention. See *Phelan v. Vill. of Lyons*, 531 F.3d 484, 488 (7th Cir. 2008).

Traffic stops lawfully may be supported by either probable cause or reasonable suspicion, and the Seventh Circuit has drawn a distinction between the two. "[T]raffic stops supported by probable cause are arrests," such that extended custody is permissible and the occupants of the stopped vehicle have no "right to be released the instant the steps to check license, registration, and outstanding warrants, and to write a ticket, had been completed." *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002) (en banc); see also *Bueno*, 703 F.3d at 1061 ("[B]ecause a stop based on probable cause will also justify a custodial arrest, traffic stops based on probable cause are not subject to the time limitations of *Terry v. Ohio*, 392 U.S. 1, 20 (1968)."). Traffic stops predicated on reasonable suspicion, however, are not arrests. "For an investigative stop based on reasonable suspicion to pass constitutional muster, the investigation following it must be

reasonably related in scope and duration to the circumstances that justified the stop in the first instance so that it is a minimal intrusion on the individual's Fourth Amendment interests." *United States v. Robinson*, 30 F.3d 774, 784 (7th Cir. 1994). Police officers may question an individual stopped on reasonable suspicion; "[q]uestions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." *Id.* at 954; see also *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *United States v. McBride*, 635 F.3d 879, 882 (7th Cir. 2011). But "[a] person stopped on reasonable suspicion must be released as soon as the officers have assured themselves that no skullduggery is afoot." *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (en banc). Whether a stop causes an individual little or no inconvenience is "a fact-bound, context-specific inquiry." *Bueno*, 703 F.3d at 1061; see also *United States v. Adamson*, 441 F.3d 513, 521 (7th Cir. 2006) ("There is no bright-line rule as to how long an investigative detention may last; instead we look to whether the police diligently pursued a means of investigating that was likely to confirm or dispel quickly their suspicions.").

Defendants do not suggest that the stop at issue was supported by probable cause. See generally [6]; [11]. In keeping with their stance, as well as the Court's obligation to draw every reasonable inference in Plaintiff's favor at this stage, for purposes of this motion the Court treats the stop as one supported only by reasonable suspicion.

Defendants assert that they are entitled to qualified immunity because "Plaintiff absolutely cannot establish that a constitutional violation occurred in this matter and that the actions of the Defendant Officers were not objectively reasonable." [6] at 6. They contend that their "actions after the stop were reasonable and objectively calculated to positively determine the identity of the Plaintiff. Therefore, no infringement of the Plaintiff's civil rights occurred

8

during the stop." *Id.* at 7. They further claim that "Plaintiff does not have a clearly established right to be free of having police officers verify his identity when his actions raise a reasonable suspicion that he is being deceitful." [11] at 7.

The Court agrees with Defendants that, as a general proposition, people do not have a constitutional right to be free from police officers' attempts to ascertain their identities. See *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty.*, 542 U.S. 177, 185-86 (2004). However, Plaintiff does not allege that Defendants violated his constitutional rights by asking him to identify himself. He instead alleges that they violated his constitutional rights by detaining him for an unreasonable amount of time for reasons unrelated to the original purpose of the traffic stop. See [9] at 2; *id.* at 6-11.

At this stage of the proceedings, Plaintiff is required only plausibly to allege – not prove – the deprivation of a constitutional right. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008). Here, Plaintiff has alleged that Defendants violated his Fourth and Fourteenth Amendment rights by unreasonably detaining him for upwards of twenty minutes and subjecting him to escalating demands for proof that he was not Theodore Cleveland. This satisfies the federal notice pleadings standards. See Fed. R. Civ. P. 8; *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. The pleading standard is no different simply because qualified immunity may be raised as an affirmative defense. *Tamayo*, 526 F.3d at 1090 (citing *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998)). Consequently, the Seventh Circuit has cautioned that, although qualified immunity must be resolved at the earliest possible stage, see *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1998), this rule must be tempered by the notice pleading requirements of Rule 8. See *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case,

9

dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.") (quotation omitted)); *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000); *id.* at 775 (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal.").

There is no question that the right to be free from unreasonably lengthy detention during an investigatory stop is clearly established. See, *e.g.*, *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Terry v. Ohio*, 392 U.S. 1, 18-19 (1968); *Childs*, 277 F.3d at 952 ("Questioning that prolongs the detention, yet cannot be justified by the purpose of such an investigatory stop, is unreasonable under the fourth amendment." (citing *United States v. Sharpe*, 470 U.S. 675, 685 (1985)). The Court therefore denies Defendants' motion to dismiss Plaintiff's complaint on qualified immunity grounds. Whether Defendants detained Plaintiff for an unreasonably lengthy period of time or otherwise violated his Fourth or Fourteenth Amendment rights is a fact-intensive inquiry that cannot be resolved by the Court at this point in the proceedings.

## IV.   Conclusion

For the reasons stated above, Defendants' motion to dismiss on qualified immunity grounds [5] is denied. This case is set for further status hearing on 6/18/2013 at 9:00 a.m.

Dated: June 3, 2013

                                              Robert M. Dow, Jr.
                                              United States District Judge